UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy Beers

    v.                                Case No. 20-cv-968-LM

Warden, New Hampshire
State Prison, et al.[1]

**REPORT AND RECOMMENDATION**

Timothy Beers, an inmate at the New Hampshire State Prison for Men ("NHSP") proceeding in forma pauperis and without an attorney, seeks to addend his complaint in accordance with this court's May 20, 2021 Order (Doc. No. 11) granting him leave to amend his allegations as to certain claims for relief. Beers's Reply to May 20, 2021 R&R and Order (Doc. No. 18) ("Addendum"). His complaint (Doc. No. 1), as addended, is before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).

---

[1] Beers names the following persons as defendants: NHSP Warden Edmark, N.H. Department of Corrections ("NHDOC") Commissioner Helen Hanks, NHDOC Director of Security Chris Kench, NHDOC Medical Director Paula Mattis, NHDOC Deputy Medical Director Bernie Campbell, NHSP Dr. Groblewski, NHSP Dental Director White, NHSP Registered Nurses ("RN") John/Jane Does #1-8, NHSP Medical Records Personnel John/Jane Does #1-4, NHSP Corrections Officers John/Jane Does 1 & 2, and the NHDOC Postmaster, all in their individual and official capacities.

**Preliminary Review Standard**

The court preliminarily reviews complaints filed by incarcerated persons and pro se litigants proceeding in forma pauperis to assess, among other things, whether the complaint states a claim for relief. 28 U.S.C. §§ 1915A(b) & 1915(e)(2); LR 4.3(d)(1)-(3). In conducting this review, the court construes pro se complaints liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). It then determines whether, stripped of legal conclusions, the factual content in the complaint and the inferences reasonably drawn therefrom, taken as true, state a plausible claim for relief. See Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court may dismiss claims sua sponte if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. §§ 1915A(b) & 1915(e)(2); LR 4.3(d)(1)-(3).

**Background**

**A.   Deliberate Indifference to Beers's Serious Medical Needs**

At the heart of his complaint, Beers claims that New Hampshire Department of Corrections ("NHDOC") officials have acted with deliberate indifference to his serious medical needs by failing to provide him with properly working hearing aids, as well as other allegedly necessary medical and dental treatments,

for more than one-and-one-half years. Compl. (Doc. No. 1, ¶¶ 14-27).

With respect to medical care, Beers reports that he has sent numerous medical request slips to NHSP's medical department to have his hearing aids fixed, but the medical staff defendants have failed to order necessary parts and have refused to perform necessary maintenance. Id. ¶¶ 15-17. Beers also relays that he is supposed to have quarterly diabetic checkups; yet despite being scheduled for many appointments (which were subsequently cancelled), he allegedly has not received a checkup for over one-and-a-half years. Id. ¶ 28. For his dental needs, Beers similarly alleges that he has sent many request slips for teeth cleanings and repairs over the past two years but has received neither cleanings nor repairs. Id. ¶¶ 22-23.

Beers further states that he has sent many request slips about cancelled appointments and medication renewals to NHDOC medical staff to no avail and, as a result, has "had to go to sick call" to get medication refills. Id. ¶ 19. He also maintains that he has grieved the above-alleged incidents, as well as NHDOC staff members' refusal to respond to request slips, to NHDOC Director of Medical and Forensic Services Paula Mattis, NHSP Warden Edmark, and NHDOC Commissioner Helen Hanks. Id. ¶¶ 31, 33, 34, 35, 41, 46-47. Beers asserts that, despite

his grievances, NHDOC supervisors have done nothing to resolve his inadequate medical and dental care claims.  E.g., id. ¶ 47.

**B.    May 20 Report and Recommendation**

On May 20, 2021, the court completed a preliminary review of Beers's complaint and issued a Report and Recommendation ("R&R") (Doc. No. 10) on Beers's asserted claims.  The court found that Beers's allegations sustained, of his eight claims for relief, only the claims identified in the R&R as Claims 1(a)-(b), alleging that certain defendants deprived him of adequate medical care by failing to provide (a) working hearing aids and (b) prescribed medicine, and ordered service of those subclaims.  See id. at 8-9; May 20, 2021 Order (Doc. No. 11, at 3-4).  In that Order, the court also granted Beers leave to amend four insufficiently pled claims identified in the R&R as Claims 1(c) and 1(d) (inadequate medical care based on lack of routine examinations and special accommodations), Claim 2 (inadequate dental care), Claim 3 (supervisory liability), and Claim 4 (First Amendment retaliation).[2]   May 20, 2021 Order (Doc. No. 11, at 3-6).

---

[2] In the May 20, 2021 R&R, the court also recommended that the district judge dismiss Claims 5-8 for failing to state a claim for relief.  May 20, 2021 R&R (Doc. No. 10, at 17-23). Due to several requests for extensions, the period for Beers to object to the recommended dismissal of Claims 5-8 has not yet expired.

4

**C.   Addended Factual Assertions**

Beers's addendum alleges or suggests the following new factual assertions:

Claim 1

- During an unspecified period, Beers went without prescribed medication for his legs, knees, and ankles for over three weeks.  Addendum (Doc. No. 11, at 4).

- Beers received working hearing aids on March 15, 2021.  Id. at 11.

Claim 2

- NHSP Dental Director White schedules dental appointments at NHSP.  Id. at 5.

- Beers has sent three inmate request slips to the dental department asking for cavity fillings, a night guard to prevent teeth grinding, and a teeth cleaning, but has received no responses.  Id. at 6.

- A licensed dentist found that Beers needs a cavity filled.  See id.

- Untreated tooth decay can result in heart disease, kidney failure, and liver problems, and Beers's diabetes puts him at a higher risk for these problems.  Id. at 5.

Claim 3

- NHDOC Medical Director Mattis and NHSP Warden Edmark know about Beers's medical and dental problems as part of their supervisory roles at NHSP, but have not intervened to resolve Beers's problems.  Id. at 7.

- Commissioner Hanks knows about Beers's hearing aids because of her past (unspecified) job.  Id.

- On January 28, 2019, Beers sent Warden Edmark a grievance regarding lack of hearing aid supplies, to which Edmark did not respond.  Id. at 9.

- On August 4, 2020, Beers sent Warden Edmark a grievance about Mattis, NHSP Dr. Groblewski, and the medical department, which Mattis rejected for failing to comply

5

   with Correctional Rule 312.01(c)(6) (requiring inmates to include a brief description of the issue that the inmate wants staff members to respond to).  Id.

- On August 20, 2020, Beers sent a grievance to Commissioner Hanks about his rejected August 4 grievance, which Mattis similarly rejected.

- On September 22, 2020, Beers sent Warden Edmark a grievance reporting that NHDOC employees had harassed him about his hearing disability and his non-working hearing aids, and that Captain Masse refused to investigate.  Id.  Edmark responded that Beers had to go through medical for his concerns.  Id.

- On October 15, 2020, Beers sent Commissioner Hanks a grievance concerning his September 22 grievance.  An unspecified person responded by asking what Beers wanted to be done with Captain Masse.  Id.

- On December 5, 2020, Beers sent Warden Edmark a grievance about HIPAA violations and the lack of responses to his other grievances.  Id.  Mattis responded by asking for further information.  Id.

- On December 29, 2020, Beers replied to Mattis's December response, but this reply was rejected because it listed no names or officer ID badges.  Id.

- On January 11, 2021, Beers sent Commissioner Hanks a grievance regarding his rejected December grievances.  Id.

- On January 23, 2021, Beers sent Warden Edmark a grievance asking why he had "gone 65+ days without working hearing aids."  Id. at 10.  A month later, Mattis responded that (1) medical fell under the nurse coordinator, not the Warden; and (2) Beers's hearing aids were sent out for repair on February 4, 2021.  Id.

- On January 23, 2021, Beers sent a second grievance to Warden Edmark stating that he had gone 14 days without medications and as a result, suffered from cracking hands, bleeding legs, and pain.  Id.  A month later, Mattis responded that Beers did not go to sick call.

6

Claim 4
- On a date uncertain, Beers complained to Corrections Officer Cass about not being denied his medication and about not having working hearing aids. Id. at 12. Beers then requested to talk to a supervisor, but this request was denied by C.O. Cass and another unnamed officer. Id.

- Thirty minutes later, "CPL Provost" fired Beers from his job cleaning offices, in Beers's view, because of his disability. Id. Beers's Addendum suggests prison staff stopped him from working because he did not follow a C.O.'s instruction due to being unable to hear. See id. at 23.

- Beers received a discipline report ticket because of his failure to follow an instruction, for which he had a disciplinary hearing. Id. at 12.

- In the following months/days, Beers was harassed further by corrections officers, and reported the harassment to Captain Masse, who responded that it was Beers's "problem" due to his hearing aids. Id.

- On information and belief, after Beers pressed the harassment issue with Captain Masse, "an email was sent out saying that [Beers] was not allowed to work" in Beers's immediate housing unit. Id.

- Captain Masse got Beers fired from another job two months later and falsified official documents regarding Beers's grievances. Id.

## Discussion

**A.   Claim 1: Inadequate Medical Care**

In Claim 1, Beers contends that prison officials acting with deliberate indifference deprived him of adequate medical care for his serious medical needs, in violation of the Eighth Amendment, by failing to provide him with (a) working hearing aids, (b) prescribed medicines, (c) routine examinations and

7

treatments, and (d) other accommodations to his special medical needs. Compl. (Doc. No. 1, at 10). In the May 20, 2021 R&R, the court explained more fully the requirements for pleading an Eighth Amendment inadequate medical care claim. See Doc. No. 10, at 5-9 (noting, among other things, that to prove such a claim, a prisoner must demonstrate that: (1) he or she has a serious medical need, and (2) prison officials exhibited deliberate indifference to that need (citing Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014)). The court incorporates that discussion by reference.

Taken as true for the purposes of preliminary review, Beers's addended allegations remain sufficient to plead an Eighth Amendment claim based on issues with his hearing aids and prescribed medicines (Claim 1(a) & (b)). As discussed in the May 20, 2021 R&R, Beers's allegations intimating that he is deaf or hard of hearing and diabetic (or pre-diabetic) suggest that he may have at least two serious medical needs. See Gilmore v. Hodges, 738 F.3d 266, 276 (11th Cir. 2013) ("Substantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need."); Hammonds v. Theakston, 833 F. App'x 295, 300 (11th Cir. 2020) (finding that "Type 1 diabetes is a 'serious medical condition'"). Additionally, his allegations plausibly suggest that those directly involved in his medical care, including (as alleged) defendant Dr.

8

Groblewski, knew of these conditions and purposefully denied Beers treatment for over a year through a pattern of denying or delaying prescriptions and functioning hearing aids. See Reaves v. Dep't of Corr., 333 F. Supp. 3d 18, 24 (D. Mass. 2018) (finding triable issue on deliberate indifference where there was a "pattern of denying, delaying, and/or interfering with [an inmate's] medical care over a prolonged and significant period of time").

Beers's addended allegations fall short, however, of stating an Eighth Amendment claim based on the denial of routine medical appointments or unspecified accommodations (other than the provision of hearing aids and prescribed medications). Though Beers has sufficiently alleged severe medical conditions, his addended allegations do not explain, "with specificity, how the alleged delay or denial of any medical examinations or the failure to provide unspecified accommodations related to a diagnosed medical condition, or other serious medical need, toward which the defendants acted with deliberate indifference." May 20, 2021 Order (Doc. No. 11, at 3-4) (granting Beers leave to allege additional facts showing these elements). As such, Beers has not shown (1) how his medical conditions were exacerbated by a delay or denial of routine examinations or special accommodations, or (2) whether and how the persons responsible for medical scheduling were aware of the severity of

Beers's specific medical needs. See Kosilek, 774 F.3d at 83 (deliberate indifference "requires evidence that the failure in treatment was purposeful" or that prison officials exhibited a "wanton disregard" to the prisoner's needs, "requiring consciousness of 'impending harm, easily preventable.'" (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993))).

Given these deficiencies, Beers's addended allegations fail to state an Eighth Amendment claim based on lack of routine medical care or special accommodations. The district judge should therefore dismiss Claims 1(c) and 1(d).

**B.    Claim 2 – Inadequate Dental Care**

In Claim 2, Beers asserts that certain defendants deprived him of adequate dental care, in violation of the Eighth Amendment, by canceling dental appointments and not responding to request slips for teeth cleaning and teeth repair. Beers represents that he has not had his teeth cleaned or repaired for over two years. In his Addendum, he further asserts: that a licensed dentist has found that he has cavities that need fillings; that unaddressed cavities can result in heart disease, kidney failure, or liver problems; that he is at a higher risk for these adverse health consequences because of his diabetes; and that he has sent at least three inmate request slips to the dental department, but received no responses. See Addendum (Doc. No. 11, at 5-6).

"Denial of dental care is considered a denial of medical care, which can constitute an Eighth Amendment violation when prison authorities are deliberately indifferent to a prisoner's serious medical needs." Roy v. Wrenn, No. 07-CV-353-PB, 2008 WL 11509969, at *7, 2008 U.S. Dist. LEXIS 19944, at *22-24 (D.N.H. Feb. 29, 2008), R&R adopted, 2008 WL 11509965, 2008 U.S. Dist. LEXIS 28220 (D.N.H. Apr. 4, 2008). "Although a mere delay in needed dental care will not violate the Eighth Amendment, when that delay causes or gives rise to a substantial risk of serious harm to a prisoner, the requisite deliberate indifference to a serious medical need is found." Id. (citing Farrow v. West, 320 F.3d 1235, 1243-44 (11th Cir. 2003) (need for dental care combined with the effects of not receiving it may give rise to an Eighth Amendment claim), and Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (delay in dental care coupled with knowledge of patient's pain can support an Eighth Amendment claim)).

Construed liberally, Beers's addended allegations arguably suffice to state an Eighth Amendment inadequate dental care claim based on the allegedly substantial risk of serious damage to Beer's future health posed by the denial of Beers's inmate requests for fillings and routine care by NHSP Dental Director White and other dental staff. See also May 20, 2021 Order (Doc. No. 11, at 4) (granting Beers leave to add non-conclusory allegations showing "(1) how the denial of his requests for

11

teeth cleanings or teeth repairs posed a 'sufficiently substantial risk of serious damage to [his] future health'; (2) the identity of the defendants who denied him treatment; and (3) what each defendant specifically knew and did in response to each of Beers's requests for teeth cleanings and repairs" (citation omitted)).  Accordingly, in an Order issued simultaneously with this R&R, the court directs service of Claim 2 on the NHDOC defendants responsible for providing Beers with dental care, including Defendant White.

## C. Claim 3 – Supervisory Liability

For his third claim, Beers contends that the defendants with supervisory roles over the prison medical department are liable for their subordinates' constitutional violations, including their refusals to respond to inmate request slips, because the supervisors failed to take remedial actions in response to Beers's grievances for denials of medical care. Compl. (Doc. No. 1, at 16, 20).  Liberally construed, his addended allegations fall short of stating a supervisory liability claim.

To plead a "supervisory liability claim under section 1983," a prisoner like Beers must, at minimum, "allege facts showing that the supervisor's conduct sank to the level of deliberate indifference" as to the prisoner's allegedly unaddressed medical needs.  See Parker v. Landry, 935 F.3d 9, 14

(1st Cir. 2019) (citations omitted). "A showing of deliberate indifference has three components: the plaintiff must show (1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists," id. (internal quotation marks and citations omitted), "and failed to take reasonable steps to mitigate or prevent that risk," Rowe v. Buss, No. 21-1182, 2021 WL 5232512, at *2, 2021 U.S. App. LEXIS 33389, at *6 (7th Cir. 2021) (internal citations omitted)). Additionally, "if the complaint contains facts plausibly showing deliberate indifference, the plaintiff must also allege facts giving rise to a causal nexus between the supervisor's acts or omissions and the subordinate's misconduct." Parker, 935 F.3d at 14.

Here, Beers's allegations, even when liberally construed, fail to show that any supervisor's act or omission amounted to deliberate indifference, or that there is a causal nexus between a supervisor's conduct and any of their subordinates' alleged violations of Beers's constitutional rights. See May 20, 2021 Order (Doc. No. 11, at 13-14) (requiring that Beers add non-conclusory allegations showing, among other things, "that the supervisory defendants knew of, or could have drawn the inference that, a substantial risk of serious harm to Beers existed" and "how each supervisor's acts or omissions

13

specifically caused or contributed to an abridgment of Beers's constitutional rights by a subordinate"). To the contrary, his addended allegations show that, when alerted to Beers's hearing aids issues in late 2020, Warden Edmark, through Medical Director Mattis, sought additional information from Beers about the complained-of matters and ultimately had Beers's hearing aids sent out of the prison facility for repairs.

As such, Beers has failed to state a claim for relief based on supervisory liability. The district judge should thus dismiss Claim 3.

D.  **Claim 4 – First Amendment Retaliation**

In the May 20, 2021 Order, the court granted Beers leave to amend his complaint to state a First Amendment retaliation claim by adding non-conclusory allegations showing a causal connection between his alleged denial of medical treatment and his alleged engagement in protected First Amendment conduct. Doc. No. 11, at 16-17. The court explained that to do so, Beers had to:

> (1) identify the specific individual(s) who allegedly retaliated against him, (2) allege additional facts showing what specific adverse action each identified defendant took against Beers, (3) show how each adverse action was non-de minimis, and (4) allege facts showing how Beers's engagement in activities protected by the First Amendment was a but-for cause for each allegedly adverse action taken against him.

Id.

14

In his addended complaint, Beers alleges for the first time that he was fired from his prison job as a result of his hearing disability and being unable to hear the supervising corrections officer.  See Addendum (Doc. No. 18, at 12) ("When a person is qualified to do a job and you fire him due to his disability this is harassment."); id. at 23 ("CO stops me from going to work for 3 days due to I did not hear him." (errors in original)).  In doing so, he has not alleged that he was fired for engaging in conduct protected by the First Amendment.  Nor has he included any other allegations demonstrating a causal connection between his previously alleged denial of medical treatment and protected First Amendment activities.  As such, Beers's addended allegations fail to state a First Amendment Retaliation claim in accordance with the court's grant of leave. See May 20, 2021 Order (Doc. No. 11, at 16-17).

Finally, to the extent Beers seeks to amend his complaint beyond the scope permitted by the May 20, 2021 Order to state new causes of action regarding his employment, that request should be denied.  Put simply, Beers's claim(s) that he was terminated from his job because of his disability do not belong in this case.  These claims, which appear to arise under the Americans with Disabilities Act ("ADA"), involve different standards of proof from the Eighth Amendment claims presently at issue.  Further, these claims do not arise out of the same

15

transaction, occurrence, or series of transactions or occurrences as those asserted in the operative complaint. See Widi v. Fed. Bureau of Prisons, No. 14-cv-160-SM, ** WL **, 2017 U.S. Dist. LEXIS 163828, at *26 (D.N.H. July 17, 2017), R&R approved, 2017 WL 4335024, 2017 U.S. Dist. LEXIS 161846 (D.N.H., Sept. 27, 2017) (dismissing claims without prejudice as "they involve[d] different proof, different standards, and a different defendant"); Griffin v. Wrenn, No. 17-cv-161-LM, 2018 WL 3421391, at *6, 2018 U.S. Dist. LEXIS 115325, at *15 (D.N.H. Apr. 3, 2018), R&R approved, 2018 WL 3421347, 2018 U.S. Dist. LEXIS 114402 (D.N.H., July 5, 2018) (dismissing unrelated claim without prejudice to the plaintiff's ability to refile in a new case). Additionally, Beers's employment-based claim(s) appears to center on new defendants who are not pertinent to the surviving claims in this case. Cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . .").

Accordingly, to the extent Beers seeks to amend his complaint to add new, employment-discrimination-stylized causes of action, the district judge should dismiss those claims without prejudice to Beers's ability to refile them in a new case, if he so chooses.[3] Regardless, the district judge should

---

[3] The court makes no finding, and offers no opinion, as to whether Beers has sufficiently stated such a cause of action for purposes of surviving preliminary review or a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

dismiss Count 4, alleging retaliation, for failing to state a claim.

## Conclusion

For the foregoing reasons, the district judge should dismiss Claims 1(c)-(d), 3, and 4 (as identified in the May 20, 2021 R&R (Doc. No. 10)) of Beers's complaint (Doc. No. 1), and dismiss, without prejudice, Beers's potential claims of employment discrimination that are not part of this lawsuit.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 15, 2021

cc:  Timothy C. Beers, pro se
     Nathan W. Kenison-Marvin, Esq.
     Stephen J. Soule, Esq.