UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy Beers

v.                                                    Case No. 20-cv-968-LM

Warden, New Hampshire
State Prison, et al.


**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Timothy Beers ("Beers"), who is incarcerated at the New Hampshire State Prison for Men ("NHSP") and is proceeding pro se, has brought this action pursuant to 42 U.S.C. § 1983 against the Chief Medical Officer of the New Hampshire Department of Corrections ("DOC"), Thomas Groblewski ("Dr. Groblewski"); NHSP Dental Director, Alexis M. Isabelle ("Isabelle"); a Nurse Practitioner identified only as "Sara"; and eight unnamed Registered Nurses, John/Jane Does #1-#8.  Beers claims that the defendants deprived him of adequate medical and/or dental care, in violation of his Eighth Amendment rights, by failing to provide him with working hearing aids for over a year, mismanaging his prescribed diabetes medications and failing to treat him for tooth decay and a cavity.  Additionally, Beers claims that Dr. Groblewski should be held liable under a theory of supervisory liability for failing to correct the actions of prison medical staff who mismanaged his prescribed diabetes medications.

The matter is before the court on "Defendant Dr. Groblewski's Motion for Summary Judgment with Respect to PLRA Exhaustion" (Doc. No. 84).  Therein, Dr. Groblewski is seeking summary judgment with respect to Beers's claims against him on the grounds that Beers failed to exhaust his administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  For the reasons described below, this court

recommends that Dr. Groblewski's motion be ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends that the motion be allowed to the extent Beers's claims arise out of the alleged mismanagement of his prescribed diabetes medications but denied with respect to Beers's claim that Dr. Groblewski violated his Eighth Amendment rights by depriving him of working hearing aids.[1]

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party[.]'" Taite v. Bridgewater State Univ., Bd. of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018)). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case[.]" Id. (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

Where a properly supported motion for summary judgment is presented, the non-moving party can avoid summary judgment "by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006)). Accordingly,

---

[1] Beers's Eighth Amendment claim alleging a denial of adequate dental care is not addressed in Dr. Groblewski's motion for summary judgment because that claim is not asserted against Dr. Groblewski.

"the nonmoving party must … 'set forth specific facts showing that there is a genuine issue for trial[.]'" Carrozza v. CVS Pharmacy, Inc., 992 F.3d 44, 56-57 (1st Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   "Conclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (quoting Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).   In determining whether a trial-worthy issue exists, the court will consider "all of the record materials on file, including the pleadings, depositions, and affidavits[,]" but is not permitted to evaluate the credibility of witnesses or weigh the evidence.  Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

Applying this standard in the instant case, the facts relevant to Dr. Groblewski's motion for summary judgment are as follows.[2]

---

[2] The facts are derived from the parties' pleadings, the Defendant's Statement of Material Facts That Are Not in Dispute in Support of Motion for Summary Judgment ("Def. SOF") (Doc. No. 84-2); the Declaration of Linda Susca ("Susca Decl.") and the exhibits attached thereto ("Susca Ex.") (Doc. No. 84-3); and the exhibits attached to the plaintiff's response to Dr. Groblewski's motion for summary judgment ("Pl. Ex.") (Doc. No. 86).  Beers challenges Ms. Susca's Declaration, on which Dr. Groblewski relies to show that Beers failed to complete all the steps necessary to exhaust the remedies that were available to him under the DOC's administrative grievance process.  Ms. Susca is the "Supervisor VI – Client Records" at the DOC and is familiar with the DOC's grievance policy and procedures.  Susca Decl. ¶¶ 1-2.  Beers argues that her Declaration is inaccurate and unreliable because Ms. Susca fails to discuss or include as exhibits the Inmate Request Slips ("IRSs") and Grievance Form that Beers submitted in connection with his response to the motion for summary judgment.  See Doc. No. 86 at 1.  As detailed below, however, Dr. Groblewski does not argue that Beers failed to exhaust his administrative remedies by failing to submit IRSs at the initial level of the DOC's grievance process, and does not dispute that Beers satisfied that step of the administrative process.  Therefore, Ms. Susca's failure to address the IRSs does not undermine the accuracy of her Declaration.  With respect to the Grievance Form that Beers submitted in response to the motion, the record demonstrates that it is not relevant to the exhaustion issue.  The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit."  Jones v. Bock, 549 U.S. 199, 202 (2007).  Beers filed this action on September 22, 2020, but the Grievance Form at issue is dated December 29, 2020.  See Pl. Ex. 9.  Consequently, it does not support a finding that Beers exhausted his administrative remedies before filing his lawsuit and does not provide a basis for disregarding Ms. Susca's Declaration.

3

## BACKGROUND

Plaintiff Beers is a prisoner at the NHSP and was incarcerated there at all times relevant to this lawsuit.  It is undisputed that he suffers from a hearing deficit for which he uses hearing aids, and from diabetes for which he requires regular care and prescription medications.  See Def. SOF ¶ 3; Susca Exs. 5, 8; Pl. Ex. 4.[3]  Defendant Dr. Groblewski is the Chief Medical Officer of the DOC.  Wilson v. Groblewski, No. 19-cv-786-JL, 2021 U.S. Dist. LEXIS 231659, at *1, 2021 WL 5762055, at *1 (D.N.H. Dec. 3, 2021).  He is responsible for providing medical care to prisoners at the NHSP.  Def.'s Ans. (Doc. No. 46) at 1.  As the court clarified in an Order dated April 21, 2023, Beers has asserted three claims against Dr. Groblewski in this action.  First, Beers claims that Dr. Groblewski "violated Mr. Beers's Eighth Amendment rights in that, acting with deliberate indifference to Mr. Beers's serious medical need – his hearing impairment – [Dr. Groblewski] deprived him of adequate medical care by failing to provide him with working hearing aids for more than a year."  Doc. No. 75 at 4.  Next, Beers claims that Dr. Groblewski "violated Mr. Beers's Eighth Amendment rights in that, acting with deliberate indifference to Mr. Beers's serious medical need – his diabetes – [Dr. Groblewski] failed to properly manage his prescribed medications."  Id.  Finally, Beers claims that Dr. Groblewski "is liable to Mr. Beers under a theory of supervisory liability for failing to correct the conduct of medical staff members who were mismanaging his prescription diabetes medication, despite being aware of those issues."  Id.  At issue is whether Beers exhausted the administrative remedies that were available to him before filing these claims against Dr. Groblewski in federal court.

---

[3] Unless otherwise indicated, references to the Susca exhibits are to the exhibit numbers stamped on the documents.  References to the plaintiff's exhibits reflect the order in which Beers filed the exhibits.

Details of the Alleged Inadequate Medical Care

Beers asserts that during the period from 2019 to the filing of his complaint on September 22, 2020, he received inadequate medical care for his hearing impairment because prison medical staff failed to provide him with proper, functioning hearing aids.  See Def. SOF ¶ 4; Compl. (Doc. No. 1) ¶ 14.  While it is undisputed that Beers received a new pair of hearing aids, the plaintiff contends that prison medical staff did not take the steps necessary to ensure that the hearing aids would work.  See Def. SOF ¶ 7; Compl. ¶ 15.  In particular, Beers alleges that NHSP medical personnel failed to order the filters needed for the hearing aids to operate properly and that he never received a hearing test, which was required to tune the hearing aids properly.  Compl. ¶¶ 15, 25.  He also alleges that the nursing staff was unable to obtain hearing aid tubes that fit his devices correctly.  See id. ¶ 26.

Beers claims that in the spring of 2020, he spoke with Dr. Groblewski by telephone regarding the problems he was experiencing with his hearing aids, and Dr. Groblewski assured him that the matter would be resolved quickly. Def. SOF ¶ 6.  Allegedly, however, the problems continued.  According to the plaintiff, Dr. Groblewski and Registered Nurses John/Jane Does #1-#8 failed to provide him with functioning hearing aids for over a year.  See id. ¶ 3; Doc. No. 75 at 4.

With respect to his diabetes medications, Beers asserts that the prison medical staff failed to renew certain of his prescriptions even though he submitted many request slips asking them to do so.  See Def. SOF ¶ 9; Compl. ¶ 19.  He contends that as a result of this failure, he was forced to attend sick call where he was required to pay for the visit even though he was entitled to receive free medical care.  Compl. ¶ 19.  According to Beers, one of the nurses who was present during sick call told him that Dr. Groblewski would review his medications and get back to him about his

prescriptions.  See Compl. ¶ 21.  Beers claims that Dr. Groblewski failed to follow through on this matter.  Id.

<u>Beers's Submission of Grievances</u>

The record demonstrates that during the period between February 2019 and December 2020, Beers submitted Grievance Forms to both the DOC's Medical and Forensics Director, Paula Mattis, and the NHSP Warden, Michelle Edmark, in which he complained about the medical care he was receiving at the NHSP.  See Pl. Ex. 9; Susca Exs. 5-9.  Among the issues Beers addressed in his Grievance Forms were complaints about his hearing aids.  See Susca Exs. 5-5A, 8-9.[4]  In particular, Beers complained that he had not received his hearing aid filters, and that the filters had not been ordered. Susca Exs. 5-5A, 8.  He also insisted that his hearing aids were not working properly.  Susca Ex. 9.  The record further demonstrates that during the period between June 2020 and November 2021, Beers sent a number of Inmate Request Slips ("IRSs") to Dr. Groblewski and others in which he complained about the medical staff's alleged failure to refill his prescription diabetes medications.  See Pl. Exs. 2-5, 7-8, 10-11.  However, there is no evidence that Beers filed any Grievance Forms in which he mentioned his diabetes medications or the alleged mismanagement of his prescriptions.  See Pl. Ex. 9; Susca Exs. 5-9.  Further details regarding Beers's attempt to address his complaints through the DOC's administrative process are described below in connection with this court's analysis of the exhaustion issue.

**DISCUSSION**

Dr. Groblewski argues that he is entitled to summary judgment on Beers's claims against him because Beers failed to satisfy the PLRA's exhaustion requirement before filing this action. For the reasons that follow, this court finds that Dr. Groblewski's motion should be allowed with

---

[4] Exhibits 5 and 5A to Ms. Susca's Declaration are copies of a single Grievance Form.

respect to Beers's claims relating to the mismanagement of his prescription medications but denied with respect to his claim that Dr. Groblewski failed to provide him with working hearing aids for over a year.

<u>Exhaustion Under the PLRA</u>

The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  There is no question that it applies to Beers's claims against Dr. Groblewski alleging deliberate indifference to his serious medical needs.  See Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (ruling that "'[p]rison conditions'" under the PLRA's exhaustion provision "include individual instances of medical mis- or non-treatment").  "There is [also] no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007).

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88).  Accordingly, "[p]roper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules because no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings."
Woodford, 548 U.S. at 90-91 (footnote omitted).

A claim that a prisoner failed to exhaust administrative remedies "is an affirmative defense under the PLRA[.]" Jones, 549 U.S. at 216. Therefore, to prevail on his motion for summary judgment, Dr. Groblewski "must show that no factfinder could reasonably conclude that plaintiff exhausted available remedies before filing suit." Burns v. Croteau, 561 F. Supp. 3d 164, 168 (D.N.H. 2020). This court finds that the defendant has met his burden with respect to Beers's prescription medication claims but has failed to show lack of exhaustion with respect to Beers's hearing aid claim.

### The DOC's Grievance Policy

During the 2019-2020 period relevant to this case, the DOC maintained a grievance policy describing a three-step administrative process through which NHSP prisoners could request a formal review of issues related to any aspect of their confinement. See Def. SOF ¶ 13. The process is described in the Declaration of Linda Susca, which was filed in support of Dr. Groblewski's motion for summary judgment. See Susca Decl. ¶ 4(a)-(c). It is also described in New Hampshire's Administrative Rules, Department of Corrections, Chapter Cor 313.04-313.06, which became effective on May 25, 2019, and are available to all DOC prisoners.[5] See Susca Decl. ¶ 3; N.H.

---

[5] The record shows that Beers filed all except one of his grievances complaining of inadequate medical care at the NHSP after May 25, 2019, the date when the Administrative Rules governing grievance procedures became effective. See Susca Exs. 5-9; Pl. Exs. 2-11. Beers filed the earlier grievance on February 15, 2019. The grievance procedures in effect at that time were set forth in the New Hampshire Department of Corrections Policy and Procedure Directive ("PPD") 1.16. Because the grievance process described in the Administrative Rules is nearly identical to the process described in PPD 1.16, and any differences do not impact the outcome of Dr. Groblewski's motion, this court finds that it is unnecessary to address those differences in this Report and Recommendation or to treat Beers's February 15, 2019 grievance differently from his remaining grievances for purposes of the exhaustion analysis.

Code Admin. R. Cor ("Cor") 313.04-313.06.  The first step in the process requires the prisoner to submit an IRS to "the lowest level staff person with the authority to address the issue raised." Susca Decl. ¶ 4(a).  An IRS must be submitted within 30 days after the incident giving rise to the prisoner's complaint and must provide enough detail to enable the recipient or appropriate prison staff member to conduct an investigation.  Id.  As a general matter, the prison staff member must complete the investigation and respond to the IRS in writing within fifteen working days after it is received.  See Cor 313.04(l).  If the prisoner can demonstrate that the use of an IRS would likely result in "a substantial risk of personal injury," or other serious harm, the prisoner is entitled to skip this step in the grievance process and proceed directly to the second step in the process.  Cor 313.04(j).

If the prisoner is dissatisfied with the response to an IRS, he may elevate the complaint by filing a Grievance Form with the "appropriate warden, director or administrator[.]" Cor 313.04(n), 313.05(d); see also Susca Decl. ¶ 4(b).  For complaints regarding medical issues, the Grievance Form must be directed to the Director of Medical and Forensic Services.  Susca Decl. ¶ 4(b).  The Grievance Form must be filed within fifteen days following the response to the IRS, and must contain enough information to allow for an investigation.  Id.  Unless the prisoner has obtained a waiver from the requirement to submit an IRS, he must demonstrate that the first step in the grievance process has been completed.  Id.  The warden, director or administrator must complete any investigation and respond to the prisoner's grievance within thirty days after receiving the Grievance Form.  Id.; see also Cor 313.05(l) and (q).  A prisoner may skip this step in the process if the prisoner can demonstrate that using it would likely result in "identifiable risk or harm to his or her physical safety or psychological well-being."  Cor 313.05(n).

A prisoner who is dissatisfied with the response at the second step in the grievance process may proceed to the final step in the three-step process. <u>See</u> Cor 313.05(s). At this step, the prisoner must submit a Grievance Form to the DOC Commissioner's Office within fifteen days following the date of the response by the warden, director or administrator. Cor 313.06(c) and (e); Susca Decl. ¶ 4(c). The Grievance Form must contain sufficient detail to allow for investigation and demonstrate that step two of the grievance process has been utilized and exhausted. Susca Decl. ¶ 4(c). The Commissioner's Office has thirty days following its receipt of the Grievance Form to conduct any investigation and respond to the prisoner's complaint. Cor 313.06(o). In contrast to the earlier steps of the grievance process, there is no exception that allows the prisoner to skip or avoid this step. <u>See</u> Cor 313.06. Therefore, a prisoner "has not finally exhausted his administrative remedies until the Commissioner's Office has responded to the [prisoner's] grievance." Susca Decl. ¶ 5.

Grievances Regarding Beers's Hearing Aids

Dr. Groblewski argues that Beers failed to exhaust his administrative remedies before filing his claims because he failed to file any grievances that satisfied all three requirements of the three-step process. Doc. No. <u>84-1</u> at 8. In support of his argument, Dr. Groblewski relies on Grievance Forms that Beers filed between February 15, 2019 and September 22, 2020, the date he initiated this action. <u>See id.</u> at 8-11. Although one of those Grievance Forms concerns an issue that is unrelated to Beers's claims against Dr. Groblewski, and thus fails to show exhaustion of the claims relevant here,[6] the remaining grievances include Beers's complaints about his hearing aids.

---

[6] In a Grievance Form dated September 3, 2019, Beers complained about an LPN's alleged failure to show up for a physical examination that had been scheduled for him. Susca Ex. 6. He further complained that his next appointment was not scheduled until 2020, which was not acceptable given his diabetes. <u>Id.</u> Because the Grievance Form contains no mention of Beers' hearing aids

Because a factfinder could reasonably conclude that Beers exhausted his administrative remedies with respect to this issue, Dr. Groblewski has not shown that he is entitled to judgment as a matter of law on Beers's hearing aid claims.

The Grievance Forms that concern Beers's hearing aids are dated February 15, 2019, October 3, 2019[7] and September 22, 2020.[8]  See Susca Exs. 5-5A, 8 and 9.  The defendant contends that these grievances were not exhausted because Beers failed to complete the final two steps of the grievance process.  See Doc. No. 84-1 at 8-11.  The record supports Dr. Groblewski's argument with respect to Beers's February 15, 2019 and September 22, 2020 grievances but does not support his argument with respect to the October 3, 2019 grievance.

In his February 15, 2019 Grievance Form, Beers complained that he had not received his hearing aid filters and that they had not been ordered.  Susca Exs. 5-5A.  Although Beers directed that grievance to the NHSP Warden, it was received by the DOC Commissioner's Office on February 20, 2019.  Id.  On March 6, 2019, Christopher Kench in the Commissioner's Office issued a written response in which he stated that "[t]he Warden cannot address medical issues."  Id.  There is no indication that Beers subsequently submitted his grievance to Director Mattis or

---

or the alleged mismanagement of his prescription diabetes medications, it is not relevant to the claims in this action and cannot establish exhaustion.

[7] In her Declaration, Ms. Susca states that Beers submitted a grievance to the Warden on October 2, 2019.  Dr. Groblewski also refers to an October 2, 2019 grievance in his Memorandum in support of his motion for summary judgment.  See Doc. No. 84-1 at 9.  However, that grievance, which is identified as Exhibit 8 to Ms. Susca's Declaration, is dated October 3, 2019.  See Susca Decl. ¶ 9; Susca Ex. 8.  This court has referred to the grievance by its actual date of October 3, 2019.

[8] The record demonstrates that Beers also submitted a Grievance Form to Director Mattis on December 29, 2020, in which he mentioned his broken hearing aids.  See Pl. Ex. 9.  However, Beers cannot rely on that Grievance Form to show exhaustion because he submitted it more than three months after he filed this lawsuit.  See Jones, 549 U.S. at 202 (explaining that the PLRA "requires prisoners to exhaust prison grievance procedures *before* filing suit." (emphasis added)).

otherwise attempted to satisfy the second step of the grievance process. Nor does Beers dispute that he failed to complete the grievance process with respect to his February 20, 2019 grievance. See Doc. 86 at 1-2.

The record similarly demonstrates that Beers failed to exhaust his September 22, 2020 grievance. On that date, Beers submitted a Grievance Form to the Warden in which he complained, among other things, that he still did not have working hearing aids. Susca Ex. 9. Warden Edmark received the Grievance Form on September 28, 2020, and issued written responses on October 7 and 8, 2020. Susca Exs. 9, 11.[9] In her first response, Warden Edmark informed Beers that he would need to pursue his concerns regarding his hearing aids "through Medical & Forensics up to Director Mattis and then the Commissioner if you can't resolve [the matter]." Susca Ex. 9. On October 8, 2020, Warden Edmark informed Beers that she had reached out to Director Mattis, who told her that Beers had an appointment with "Better Hearing" and that Beers should contact Nurse Coordinator Girioux if he had further concerns. Susca Ex. 11. There is no evidence that Beers pursued his September 22, 2020 grievance by filing a Grievance Form with the Commissioner's Office. In any event, exhaustion of this grievance was foreclosed by the fact that Beers filed the instant action on September 22, 2020, before the completion of step two of the DOC's grievance procedure.

The record supports a different conclusion with respect to Beers's October 3, 2019 grievance. The evidence shows that on that date, Beers submitted a Grievance Form in which he complained that he was not receiving chronic care for his diabetes, that medical staff had refused to check his blood sugar, and that the medical staff had refused to address the matter of his hearing aid filters. Susca Ex. 8. Although Beers directed the Grievance Form to the Warden, it was

---

[9] Susca Ex. 11 can be found on the last page of the exhibits attached to Ms. Susca's Declaration.

received in the DOC Commissioner's Office on October 9, 2019. Id.. Christopher Kench issued a written response on behalf of the Commissioner. Id. Therein, Mr. Kench stated that "[t]he record shows that you refused cronic [sic] care treatment on 6/6/19. The record also shows that you have been receiving Hearing Aid filters regularly and that your Blood Sugar checks was renewed on 9/13/19. Your grievance is denied." Id. Therefore, the record establishes that the Commissioner's Office addressed Beers's grievance on the merits.

Dr. Groblewski argues that the evidence relating to the October 3, 2019 grievance fails to establish exhaustion because Beers did not provide enough information about his hearing aid filters to enable the Commissioner to investigate his complaint, and because he skipped the second step in the three-step grievance process. Specifically, the defendant argues that "[i]nstead of describing his concern in a way that could be investigated and evaluated by the Commissioner, Mr. Beers wrote only, 'Hearing aid filters'" in his Grievance Form. Doc. No. 84-1 at 9. According to Dr. Groblewski, therefore, the grievance lacked sufficient detail to comply with the requirements of New Hampshire's grievance policy. See id. at 11. The defendant further contends that "[b]y sending the grievance to the Commissioner, Mr. Beers did not allow the Warden or Director Mattis to address [h]is concerns about hearing aid filters in the first instance as required by COR 313." Id. at 10. In other words, Dr. Groblewski asserts that Beers's procedural missteps prevented exhaustion even though the Commissioner issued a determination on the merits.

Dr. Groblewski's arguments are not persuasive. When a prisoner's allegations "have been fully examined *on the merits* by the ultimate administrative authority and have been found wanting[,]" courts have not required the prisoner to "jump through any further administrative hoops to get the same answer." Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (emphasis in original). Accordingly, in cases like this one, where a prison's administrative authority renders a

substantive determination on a prisoner's grievance at the highest level, a failure to exhaust defense presents no bar to judicial consideration. See id.; see also Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) ("[A] prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits .... [D]istrict courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." (alterations and punctuation in original; quotations and citation omitted)); Reyes v. Smith, 810 F.3d 654, 657-58 (9th Cir. 2016) (noting that "all seven of our sister circuits to have considered the issue have concluded that the PLRA exhaustion requirement is satisfied if prison officials decide a potentially flawed grievance on the merits[,]" and holding that prisoner exhausted his administrative remedies, notwithstanding his failure to comply with applicable procedural regulations, where prison officials ignored the procedural problem and rendered a decision on the merits of the prisoner's grievance); Reed-Bey v. Pramstaller, 603 F.3d 322, 326 (6th Cir. 2010) (ruling that prisoner properly exhausted his claim, despite failure to comply with prison procedural rules, where DOC officials chose to address prisoner's grievance on the merits); Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (explaining that an untimely claim is exhausted where "prison administrators choose to consider the merits of an untimely grievance"). Even if the DOC officials could have rejected Beers's grievance on procedural grounds, the Commissioner's decision to address it on the merits precludes an exhaustion defense. Therefore, Dr. Groblewski has not shown that he is entitled to summary judgment on Beers's claim regarding his hearing aids on the basis that Beers failed to exhaust his administrative remedies with regard to that claim.

<u>Complaints Regarding Prescription Medications</u>

The undisputed facts relating to Beers's complaints about the alleged handling of his prescription diabetes medications support Dr. Groblewski's motion for summary judgment on

Beers's remaining claims against him. Specifically, the evidence shows that in June and July 2020, Beers submitted IRSs to Dr. Groblewski in which he complained, among other things, about the medical staff's handling of his medications. See Pl. Exs. 7-8 (complaining about "illegal" charges for medication refills during sick call and the alleged failure of medical staff to refill Beers's prescriptions). It also shows that on July 16, 2020, Beers submitted an IRS to Director Mattis in which he asked why he was charged to refill his medications during sick call. Pl. Ex. 10. However, it is undisputed that Beers failed to present these issues to the DOC Commissioner prior to initiating this lawsuit in September 2020.[10] See Def. SOF ¶ 19. Therefore, the record demonstrates that Beers failed to properly complete the administrative process with respect to his prescription medication claims.

Beers argues that prisoners are not required to use the grievance system if it would put their lives at risk. Doc. No. 86 at 2. This argument is insufficient to support a finding of exhaustion with respect to Beers's complaints about the mismanagement of his prescription medications. As described above, a prisoner may skip the first two steps of the grievance process when he can demonstrate that doing so is likely to cause him physical or psychological harm. See Cor 313.04(j) and 313.05(n). However, there is no comparable provision that enables a prisoner to skip the final step in the administrative process. Even if there were, Beers has not presented any evidence showing that he was likely to suffer such harm. Rather, the evidence of Beers's numerous administrative filings demonstrates that Beers had no limitations on his ability to submit written complaints and grievances to the appropriate DOC officials, and that his compliance with the

---

[10] The record shows that in late 2021, well after he filed this action, Beers submitted additional IRSs to Dr. Groblewski and others in which Beers complained about the medical staff's failure to renew his prescription medications. See Pl. Exs. 2-5, 11. Not only did Beers file these IRSs too late to support exhaustion in this case, but there also is no evidence showing that he completed the grievance process by presenting that issue to the Commissioner.

DOC's grievance procedures created no identifiable or substantial risk of harm. Consequently, Beers's failure to exhaust his administrative remedies with respect to the management of his prescription medications precludes him from pursuing those claims in this case.

## CONCLUSION

For the reasons described herein, this court recommends that "Defendant Dr. Groblewski's Motion for Summary Judgment with Respect to PLRA Exhaustion" (Doc. No. 84) be ALLOWED IN PART and DENIED IN PART. Specifically, this court recommends that the motion be allowed to the extent Beers's claims arise out of the alleged mismanagement of his prescribed diabetes medications but denied with respect to Beers's claim that Dr. Groblewski violated his Eighth Amendment rights by depriving him of working hearing aids.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).


_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

December 28, 2023

cc:    Timothy Beers, pro se
       Counsel of record